MICHAEL F. BOHN, ESQ.
Nevada Bar No.: 1641
mbohn@bohnlawfirm.com
LAW OFFICES OF
MICHAEL F. BOHN, ESQ., LTD.
376 East Warm Springs Road, Ste. 140
Las Vegas, Nevada  89119
(702) 642-3113/ (702) 642-9766 FAX

Attorney for defendant Saticoy Bay LLC
Series 1838 Fighting Falcon

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| NATIONSTAR MORTGAGE, LLC, a Delaware limited liability company; FEDERAL HOME LOAN MORTGAGE CORPORATION, a government-sponsored entity; FEDERAL HOUSING FINANCE AGENCY, as Conservator of Freddie Mac,<br><br>Plaintiff,<br><br>vs.<br><br>ELDORADO NEIGHBORHOOD SECOND HOMEOWNERS ASSOCIATION, a Nevada non-profit corporation; SATICOY BAY LLC SERIES 1838 FIGHTING FALCON, a Nevada limited liability company; SEAN ROBERTS, an individual; SHAWNA ROBERTS, an individual; DOE INDIVIDUALS I-XX, inclusive; and ROE CORPORATIONS I-XX, inclusive.<br><br>Defendants. | CASE NO.: 2:15-cv-00064-JAD-PAL |

### REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Defendant, Saticoy Bay LLC Series 1838 Fighting Falcon (hereinafter "defendant Saticoy"), by and through its attorney, Michael F. Bohn, Esq., submits this reply in support of its motion to dismiss amended complaint, filed on November 2, 2015. (Doc. #39), and in opposition to plaintiffs' opposition to Saticoy Bay's motion to dismiss, filed on December 3, 2015. (Doc. #42)

1

**POINTS AND AUTHORITIES**

**LEGAL ARGUMENT**

**1.  The provisions of 12 U.S.C. § 4617(j)(3) do not apply to the HOA foreclosure sale that extinguished the deed of trust assigned to Nationstar because neither Freddie Mac nor FHFA held any interest in the Property on the date of the HOA foreclosure sale.**

At pages 3 to 5 of defendant Saticoy's motion to dismiss amended complaint (Doc. #39), defendant Saticoy established that under Nevada law, the HOA foreclosure sale at which defendant Saticoy purchased the Property extinguished the deed of trust assigned to plaintiff Nationstar.

At page 7 of their opposition, plaintiffs assert that "[o]n or about May 25, 2007, Freddie Mac purchased the Roberts Loan, and thereby acquired ownership of both the note and the Deed of Trust." The first sentence in paragraph 15 of plaintiff's amended complaint contains the same statement.  Neither pleading contains any allegations as to how Freddie Mac accomplished this "purchase" of the "Roberts Loan."  The publicly recorded assignments contradict plaintiffs' allegations, and plaintiffs have failed to produce admissible evidence of facts proving compliance with Nevada law for the alleged "purchase."

Plaintiffs have attached the deed of trust recorded on April 23, 2007 as Exhibit A to their request for judicial notice, filed on December 3, 2015.  (Doc. 44-1) Paragraph (J) on page 3 of the deed of trust states: "(J) **'Applicable Law'** means all controlling applicable federal, **state and local statutes**, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as **all applicable final, non-appealable judicial opinions**." (emphasis added) (Doc. 44-1, pg. 4 of 61)

Paragraph 16 at page 12 of the deed of trust expressly provides:

**16. Governing Law; Severability; Rules of Construction.**  This Security Interest shall be governed by federal law and **the law of the jurisdiction in which the Property is located**.  **All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law.**  Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract.  In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. (emphasis added) (Doc. 44-1, pg. 13 of 61)

As a result, by the express terms of the deed of trust, any rights or obligations that plaintiffs claim to own pursuant to the deed of trust are "subject to" the "requirements and limitations" of Nevada law.

1   At page 8 of their opposition, plaintiffs assert: "Pursuant to Nevada law, when Freddie Mac
2   purchased the Roberts Loan in May 2007, Freddie Mac thereby acquired ownership of the note and Deed
3   of Trust."  Neither the allegations in plaintiffs' amended complaint nor the exhibits to plaintiffs'
4   opposition contain any facts showing that Freddie Mac complied with the requirements of Nevada law
5   to acquire ownership of either the note or the deed of trust.

6   It is undisputed that no assignment of the deed of trust to Freddie Mac has ever been signed or
7   recorded.  Instead, an assignment of the deed of trust from MERS to BAC Home Loans Servicing, LP
8   was recorded on May 18, 2011 (Doc. 44-1, pgs. 49-51 of 61), and an assignment of the deed of trust from
9   BAC Home Loans Servicing, LP to Nationstar Mortgage, LLC was recorded on March 26, 2012. (Doc.
10  44-1, pgs. 53-54 of 61)

11  Regarding transfer of the underlying note, the Nevada Supreme Court has stated that "[t]he proper
12  method of transferring the right to payment under a mortgage note is governed by Article 3 of the
13  Uniform Commercial Code – Negotiable instruments, because a mortgage note is a negotiable
14  instrument."  Leyva v. National Default Servicing Corp., 127 Nev. 3, 255 P.3d 1275, 1279 (2011).  The
15  Court also stated: "Thus, a mortgage note is a negotiable instrument, and **any negotiation of a mortgage**
16  **note must be done in accordance with Article 3**."  Id. at 1280.  (emphasis added)

17  In order to negotiate a note, NRS 104.3201(1) requires: "[I]f an instrument is payable to an
18  identified person, negotiation requires **transfer of possession** of the instrument **and** its **endorsement by**
19  **the holder**." (emphasis added)  NRS 104.3204(1) provides that an "endorsement" is a signature "made
20  on an instrument for the purpose of negotiating the instrument."

21  In addition, a note may be transferred without an endorsement, but NRS 104.3203(2) requires that
22  the party seeking to establish its right to enforce the note "**must account for possession of the**
23  **unendorsed instrument** by proving the transaction through which the transferee acquired it." (emphasis
24  added)

25  Exhibit A to plaintiffs' opposition is a declaration by Dean Meyer, the Director, Loss Mitigation
26  for Freddie Mac.  (Doc. 42-1)  Contrary to the requirements of Fed. R. Civ. P. 56(c)(4), the declaration
27  is not "made on personal knowledge," does not "set out facts that would be admissible in evidence," and
28

3

does not "show that the affiant or declarant is competent to testify on the matters stated." Plaintiffs offer the declaration of Dean Meyer as proof that "Freddie Mac purchased the Roberts Loan," but the statements by Mr. Meyer establish that he does not claim to have ever seen the underlying note or any endorsement of the underlying note, and he does not claim to have any knowledge regarding the possession of the note. In paragraph 2 of his declaration, Dean Meyer admits that "[t]his declaration is based upon my review of Freddie Mac's systems, databases containing loan information and data, and the Guide."

Under Nevada law, ownership of a note is not acquired by making a data entry in a computer database maintained by an alleged purchaser.

Plaintiffs' amended complaint and the declaration by Dean Meyer contain no statements regarding Freddie Mac's possession of the Roberts note or the endorsement of the note by Sean and Shawna Roberts. As a result, the court cannot conclude that the note has been transferred to Freddie Mac in compliance with NRS 104.3201(1).

Plaintiffs' amended complaint and the declaration by Dean Meyer also contain no statements regarding Freddie Mac's possession of the unendorsed note signed by Sean and Shawna Roberts. Consequently, the court cannot conclude that the note has been transferred to Freddie Mac in compliance with NRS 104.3203(2).

As discussed at pages 8 to 10 of defendant's motion to dismiss amended complaint (Doc. #39), the Nevada Supreme Court held in <u>Edelstein v. Bank of New York Mellon</u>, 128 Nev., Adv. Op. 48, 286 P.3d 249 (2012), that a note can also be transferred by assigning the deed of trust securing the note. In the present case, however, plaintiffs have not alleged or identified any document that assigned the Roberts deed of trust to Freddie Mac. The deed of trust was instead assigned to BAC Home Loans Servicing on May 18, 2011 and then to Nationstar on March 26, 2012.

At page 8 of their opposition, plaintiffs assert that "ownership of the Deed of Trust was transferred to Freddie Mac along with the promissory note when Freddie Mac purchased the Loan." As noted above, however, plaintiffs have not alleged or proved that Freddie Mac complied with Nevada law to acquire an interest in the Roberts note, so plaintiffs cannot rely on that assertion to claim that Freddie Mac

acquired an interest in the deed of trust.

Plaintiffs nevertheless claim that the comments to §5.4 of the Restatement (Third) of Prop.: Mortgages (1997) "acknowledges that the assignment of a deed of trust to a servicer does not alter the fact that the purchaser of the loan remains the owner of the note and deed of trust." (Plaintiffs' Opp. at p. 9, ll. 7-8) Plaintiffs also quote from comment c to §5.4 that "[t]his follows from the express agreement to this effect that exists among the parties involved." Plaintiffs, however, have not alleged or identified the express agreement that exists among the parties regarding the Roberts Loan. Plaintiffs simply allege that "[t]he MERS-BAC Assignment was governed by and conducted pursuant to the Guide" (¶30 of Amended Complaint) and that "[t]he BAC-Nationstar Assignment was governed by and conducted pursuant to the Guide" (¶35 of Amended Complaint).

In paragraph h on page 4 of the declaration by Dean Meyer (Doc. 42-1, pg. 5 of 10), Mr. Meyer states that "[a]t the time Freddie Mac acquired the Loan and at all times thereafter, the Guide was in effect and governed the relationship between Freddie Mac, on the one hand, and BAC Home Loans and Nationstar (as applicable), on the other, with respect to the Loan." This statement is not a statement of fact based on personal knowledge. In particular, the declaration does not identify what documents exist to create a "relationship" between Freddie Mac and BAC Home Loans and/or Nationstar (as applicable) regarding the Roberts loan, and the declaration does not state that Dean Meyer has even seen or read any of the required documents. Again, a data entry on a computer screen does not prove an agency relationship between Freddie Mac and BAC Home Loans and/or Nationstar relating to a particular loan.

At page 8 of their opposition, plaintiffs assert that "[u]nder the Restatement approach adopted in *Edelstein* and *Montierth*, ownership of the Deed of Trust transferred to Freddie Mac along with the promissory note when Freddie Mac purchased the loan." Plaintiffs, however, have offered no evidence that Freddie Mac complied with Nevada law for the transfer of the underlying note. In <u>Edelstein v. Bank of New York Mellon</u>, 128 Nev., Adv. Op. 48, 286 P.3d 249, 252 (2012), for example, the Nevada Supreme Court stated: "With regard to the note, New American Funding created an allonge (the allonge), endorsing the note to the order of Countrywide Bank, N.A. Countrywide Bank then endorsed the note to the order of Countrywide Home Loans, Inc., which in turn endorsed the note in blank, as follows: 'Pay

5

Case 2:15-cv-00064-JAD-PAL   Document 50   Filed 01/04/16   Page 6 of 14

to the order of _____ Without Recourse.'" In the present case, plaintiffs have not alleged or proved any such endorsement of the Roberts note to Freddie Mac.

In <u>In re Montierth (Montierth v. Deutsche Bank)</u>, 131 Nev. Adv. Op. 55, 354 P.3d 648, 649 (2015), the Supreme Court stated that "[t]he note was subsequently transferred to Deutsche Bank," but the opinion does not discuss in detail how this transfer occurred. In the present case, plaintiffs' amended complaint does not allege, and the declaration of Dean Meyer does not prove, that the Roberts note was transferred to Freddie Mac in compliance with Nevada law.

Plaintiffs also cite the decision in <u>Montierth</u> as "holding that a foreclosure sale could proceed when the noteholder was not the beneficiary named in the recorded deed of trust" (plaintiff's opposition, p. 9, ll. 13-15) and as "holding that an investor who has a specific contractual relations which the record beneficiary has a 'fully-secured, first priority deed.'" (plaintiff's opposition, p. 10, ll. 24-26).

In <u>Montierth</u>, the recorded deed of trust designated MERS as the beneficiary of the deed of trust "solely as nominee for Lender and Lender's successors and assigns." The Nevada Supreme Court noted that the deed of trust provided:

> MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary . . ., MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of the interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

354 P.3d at 649.

Based on these publicly disclosed provisions in the deed of trust, the Court held that it was only a "ministerial" act for MERS to assign the deed of trust to Deutsch Bank without violating the automatic stay. The Court did not approve the "concealed" ownership of a note or deed of trust in the name of an undisclosed agent after MERS publicly assigned the note and deed of trust to a third party.

In the present case, at the time of the HOA foreclosure sale, MERS no longer held rights under the deed of trust because MERS had exercised its authority to assign both the note and the deed of trust to BAC Home Loans Servicing, LP. BAC Home Loans Servicing, LP in turn assigned both the note and the deed of trust to Nationstar.

Plaintiffs have not identified or produced any documents proving that Nationstar was acting

6

"solely as nominee" for Freddie Mac or that Nationstar held "only legal title to the interests" granted by the Roberts in the deed of trust. In <u>Edelstein</u>, the Nevada Supreme Court stated: "To permit an entity that is not really the beneficiary to record itself as the beneficiary would defeat the purpose of the recording statute and encourage a lack of transparency." 286 P.3d at 259. The Court in <u>Edelstein</u> also recognized that the note and deed of trust must be reunited and held by the same party in order to foreclose. <u>Id.</u> at 260.

In the present case, no document has ever been identified or recorded that assigned to Freddie Mac any interest in either the note or the deed of trust signed by the Roberts. The assignment recorded on May 18, 2011 assigned both the note and the deed of trust to BAC Home Loans Servicing, LP (Doc. 44-1, pgs. 49-51 of 61), and the assignment recorded on March 26, 2012, assigned both the note and the deed of trust to Nationstar. (Doc. 44-1, pgs. 53-54 of 61) Neither assignment contains any mention of an agency relationship between Freddie Mac and either BAC Home Loans Servicing, LP or Nationstar.

At page 10 of their opposition, plaintiffs also claims that pursuant to NRS 104.9203(7), "**[t]he attachment of a security interest** in a right to payment or performance secured by a security interest or other lien on personal or real property" grants the secured party "a security interest in the security, mortgage or other lien." (emphasis added) In the present case, however, plaintiffs have not alleged or proved that any party granted to Freddie Mac a "security interest" in the Roberts note. Plaintiffs have instead alleged that Freddie Mac "purchased" the Roberts Loan.

In <u>Edelstein v. Bank of New York Mellon</u>, 128 Nev., Adv. Op. 48, 286 P.3d 249, 254 (2012), the Nevada Supreme Court also stated that "[t]he note represents the right to repayment of the debt" and that "the holder of the note is only entitled to repayment, and **does not have the right under the deed to use the property as a means of satisfying repayment.**" (emphasis added) Consequently, plaintiffs' assertion at page 10 of their opposition that "Freddie Mac's acquisition of the promissory note gave it a secured interest in the Property" is contrary to Nevada law.

At the bottom of page 10 of their opposition, plaintiffs contend that <u>Montierth</u> holds that "an investor who has a specific contractual relationship with the record beneficiary has a 'fully-secured, first priority deed.'" In <u>Montierth</u>, however, the Supreme Court noted that "the deed of trust in this case

7

1  designated MERS as nominee, or agent, for the note holder and the note holder could compel an
2  assignment of the deed of trust." 354 P.3d at 651.  In the present case, plaintiffs have not produced
3  competent evidence of such a "specific contractual relationship" between BAC Home Loans Servicing,
4  LP and/or Nationstar relating to the Roberts note.

5  **2.     Under Nevada law, both the note and the deed of trust were assigned first
          to BAC Home Loans Servicing, LP and then to Nationstar.**

At page 12 of their opposition, plaintiffs contend that MERS had no authority to transfer the Roberts note to BAC Home Loans Servicing, LP.  Yet, plaintiffs do not deny that MERS had the authority to assign the deed of trust to BAC Home Loans Servicing, LP.  As noted at page 8 of defendant Saticoy Bay's motion to dismiss amended complaint (Doc. 39, p. 8), in In re Mortgage Electronic Registration Systems, Inc., 754 F.3d 772, 776-777 (9th Cir. 2014), the Court of Appeals stated that the Nevada Supreme Court's opinion in Edelstein v. Bank of New York Mellon, 128 Nev., Adv. Op. 48, 285 P.3d 249 (2012), "makes clear that  MERS does have the authority, for purposes of NRS § 107.080,  to make valid assignments of the deed of trust to a successor beneficiary in order to reunify the deed of trust and the note." 754 F.3d at 785.  In Edelstein,  the Nevada Supreme Court adopted the Restatement approach that "a transfer of either the promissory note or the deed of trust generally transfers both documents." 286 P.3d at 258, citing Restatement (Third) of Prop.: Mortgages § 5.4 (a) & (b) (1997).

At page 13 of their opposition, plaintiffs cite general law regarding assignments to contend that an assignee "obtains only the rights possessed by the assignor at the time of the assignment, and no more."  Plaintiffs also cite the Nevada Supreme Court's decision in Western American Corp. v. American Universal Insurance Co., 349 P.2d 615 (Nev. 1960), but that case dealt with the assignment of insurance claims that "had been satisfied in full" and not the assignment of a note and deed of trust.

At page 13 of their opposition, plaintiffs cite Culhane v. Aurora Loan Services of Nebraska, 708 F.3d 282 (1st Cir. 2013), which applied Massachusetts law to a "separate mortgage indenture in favor of MERS" as the  "nominee for [Preferred] and [Preferred]'s successors and assigns." Id. at 286.  The Court of Appeals noted that Preferred had transferred the note to fellow MERS member, Deutsche Bank Trust Company Americas, by an undated "endorsement" that "was unsuccessfully challenged below."  Id. at

8

287. As noted above, plaintiffs in this case have made no allegations and offered no evidence of an "endorsement" of the Roberts note to Freddie Mac that complies with Nevada law.

At the bottom of page 13 and top of page 14 of their opposition, plaintiffs also cite cases applying the laws of Alabama, Florida, Mississippi and Massachusetts that are inconsistent with the Nevada Supreme Court's holding in Edelstein v. Bank of New York Mellon, 128 Nev., Adv. Op. 48, 285 P.3d 249 (2012). At page 15 of their opposition, plaintiffs attempt to distinguish the present case from the decision in Edelstein by noting that the lender had endorsed the note to Countrywide who then endorsed the note in blank. At the bottom of page 15 of their opposition, plaintiffs assert that "Freddie Mac retained the note through the assignments of the deed of trust and owns the note today," and plaintiffs cite ¶ 5(i) of the declaration of Dean Meyer. Mr. Meyer's statement in ¶ 5(i), however, is a conclusion of law that is inconsistent with Nevada law. Mr. Meyer is also incompetent to provide admissible evidence regarding the ownership of the Roberts loan because he admits that he has never personally reviewed any of the underlying documents.

**3. Plaintiffs' opposition is not supported by admissible evidence.**

At page 16 of their opposition, plaintiffs claim that "[t]he Meyer declaration was made on personal knowledge" and that "[t]he printouts from the electronic databases upon which Mr. Meyer relied are admissible as business records under the FRE 803(6) hearsay exception." The electronic database, however, is not evidence that the Roberts note was ever assigned to Freddie Mac pursuant to Nevada law, and the electronic database is not evidence of the terms and conditions of the claimed relationships between Freddie Mac and BAC Home Loans Servicing, LP or Nationstar relating to the Roberts loan.

At page 17 of their opposition, plaintiffs also assert that "[t]he database records are the original source that indicates the key information relevant here." To the contrary, as noted at page 3 above, assignment of the Roberts loan must be proved by transfer of possession of the instrument **and** its endorsement by the holder, or by possession of the unendorsed instrument and proof of the transaction through which the transferee acquired it. Neither alternative is proved by an entry in a database by an alleged purchaser. Plaintiffs have not alleged in their amended complaint and have not offered evidence that Freddie Mac has possession of the Roberts note or that the note was ever endorsed to Freddie Mac.

Plaintiffs assert that "[t]he promissory note itself would not convey this information, especially if the note is endorsed in blank." This does not excuse plaintiffs from making allegations consistent with the requirements of Nevada law, or producing admissible evidence of compliance with these requirements by a person with personal knowledge of the facts of the underlying transaction.

**4. 12 U.S.C. § 4617(j)(3) contains no language that permits Freddie Mac to enforce its unrecorded interest in the real property against defendant Saticoy Bay.**

At page 18 of their opposition, plaintiffs assert that "recording is irrelevant to the existence of a property right or the Federal Foreclosure Bar's protection" because NRS 111.315 provides that an unrecorded interest "shall be valid and binding between the parties thereto without such record." Plaintiffs, however, are not seeking to enforce Freddie Mac's unrecorded interest against the Roberts, BAC Home Loans Servicing, LP, or Nationstar (with whom Freddie Mac claims to have a relationship). Plaintiffs seek to enforce Freddie Mac's unproved interest against defendant Saticoy Bay (with whom Freddie Mac has no relationship). NRS 111.325 expressly protects defendant Saticoy Bay from plaintiffs' claim that Freddie Mac held such an unrecorded interest in the real property.

At page 18 of their opposition, plaintiffs cite <u>City National Bank v. Charleston Associates, LLC</u>, 2013 WL 3875386 (D. Nev. July 25, 2013), and <u>Shipman v Wells Fargo Bank, N.A.</u>, 2012 WL 642777 (D. Nev. Feb. 24, 2012), as authority that NRS 111.315 and 111.325 "do not determine when a party is recognized as having a legal property interest," but only define when conveyances "must be recorded in order to be *enforceable* against subsequent purchasers as a matter of state law." In the present case, however, plaintiffs seek to enforce Freddie Mac's claimed "unrecorded" interest against a bona fide purchaser. As noted by the court in <u>Shipman v Wells Fargo Bank, N.A.</u>, 2012 WL 642777 (D. Nev. Feb. 24, 2012):

> When a party fails to timely record a conveyance, **the conveyance is void** as to any subsequent bona fide purchaser or mortgagee who lacks knowledge of the previous conveyance, where the purchaser or mortgagee records its conveyance first. NRS 111.325. (emphasis added)

<u>Id.</u> at *1.

As a result, under Nevada law, which was specifically incorporated by Paragraph 16 of the deed of trust, the unrecorded interest claimed by Freddie Mac was void as to defendant Saticoy Bay.

10

At the bottom of page 19 of their opposition, plaintiffs contend that "nothing in the Federal Foreclosure Bar requires that other parties be notified of Freddie Mac's property interests in order for the statutory protections to apply." Plaintiffs also contend that "other courts in this District necessarily rejected similar arguments made by purchasers like Saticoy Bay," but neither the decision in Elmer v. JPMorgan Chase Bank, 2015 WL 4393051 (D. Nev. July 13, 2015), nor the decision in 1597 Ashfield Valley Trust v. Federal National Mortgage Association, 2015 WL 4581220 (D. Nev. July 28, 2015), include any reference to or comment on the impact of NRS 111.325 and the protections provided therein.

In addition, in 1597 Ashfield Valley Trust v. Federal National Mortgage Association, the court noted that First Horizon had assigned the deed of trust to Fannie Mae on July 17, 2012 before the HOA foreclosure sale held on August 14, 2012. Id. at *18. Plaintiffs have not alleged, nor have they proved, that any such assignment of the deed of trust has ever been executed in favor of Freddie Mac for the Roberts loan.

At page 20 of their opposition, plaintiffs assert that "neither the existence of Freddie Mac's property interest nor the protection of the Federal Foreclosure Bar is dependent on recordation." Plaintiffs then assert that "Nevada's bona fide purchaser laws come into conflict with federal law, and the sate law must yield." In Valle del Sol Inc. v. Whiting, 732 F.3d 1006 (9th Cir. 2013), the Court of Appeals identified three classes of preemption: (1) express preemption "when the text of a federal statute explicitly manifests Congress's intent to displace state law"; (2) field preemption where "the States are precluded from regulating conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance"; and (3) conflict preemption "where it is impossible for a private party to comply with both state and federal law" or where the challenged state law "stands 'as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" Id. at 1022-1023.

In the present case, express preemption does not apply because no provision in Title 12 of the U.S. Code purports to displace the recording laws of the State of Nevada and the inability under Nevada law to enforce an unrecorded property interest against a bona fide purchaser like defendant Saticoy Bay.

Field preemption does not apply because the United States Supreme Court recognized in Butner

11

v. United States, 440 U.S. 48 (1979), that "[p]roperty interests are created and defined by state law." Id. at 55. The Court of Appeals in United States v. View Crest Garden Apts., Inc., 268 F.2d 380 (9th Cir. 1959), agreed that "state recording acts interfere with no federal policy as there is no federal recording system for the type of mortgages here involved." Id. at 383.

Conflict preemption does not apply because compliance with the recording laws of the State of Nevada does not make it impossible to comply with 12 U.S.C. § 4617. Compliance with Nevada's recording laws also does not stand as an obstacle to the full purposes and objectives of Congress. Although plaintiffs contend at page 21 of their opposition that there is a "direct conflict between the Federal Foreclosure Bar and Nevada's bona fide purchaser laws today," 12 U.S.C. § 4617(j)(3) only protects "property of the Agency" and not property interests of Freddie Mac's alleged undisclosed agent, Nationstar. In this regard, 12 U.S.C. § 4617(b)(2)(A)(1) states that the Agency shall immediately succeed to "all rights, titles, powers and privileges of the regulated entity" and "the assets of the regulated entity." No language in 12 U.S.C. § 4617 purports to include an "unrecorded" interest that is "void" under state law as an "asset" of the regulated entity.

It is undisputed that no interest in the deed of trust (real property) has ever been publicly assigned to Freddie Mac. It is also undisputed that MERS had the authority to assign the real property interest (deed of trust) to BAC Home Loans Servicing LP. In re Mortgage Electronic Registration Systems, Inc., 754 F.3d 772, 785 (9th Cir. 2014). BAC Home Loans Servicing LP also had the right to assign the real property interest to Nationstar. There is no conflict between 12 U.S.C. § 4617(j)(3) and NRS Chapter 116 regarding the extinguishment of Nationstar's deed of trust recorded against the real property.

In addition, 12 U.S.C. § 4617(j)(3) does not prohibit foreclosure or sale of property of the Agency in every instance – it only prohibits foreclosure or sale "without the consent of the Agency." If, however, the Agency (or a regulated entity) has no disclosed interest in real property, how could a foreclosing entity (or an innocent purchaser) know that consent was required? Nothing in the statutory language reveals an intent by Congress to protect concealed property interests (that are not recognized under state law) from being extinguished by a foreclosure sale. Federal preemption does not apply in the present case.

As noted by the Court of Appeals in Valle del Sol Inc. v. Whiting, 732 F.3d 1006, 1023 (9th Cir.

12

2013), "the purpose of Congress is the ultimate touchstone in every pre-emption case," and "in a field which the states have traditionally occupied, . . . we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." In the present case, 12 U.S.C. §4617(j) does not express an intent by Congress to pre-empt the nonjudicial foreclosure of an HOA superpriority lien pursuant to existing state law against a deed of trust that is not held in the name of the Agency (FHFA) or a regulated entity (Freddie Mac).

## CONCLUSION

By reason of the foregoing, defendant Saticoy respectfully requests that the court enter an order dismissing with prejudice all causes of action asserted against defendant Saticoy in plaintiffs' amended complaint.

DATED this 4th day of January, 2016.

LAW OFFICES OF
MICHAEL F. BOHN, ESQ., LTD.


By: / s / Michael F. Bohn, Esq. /
     Michael F. Bohn, Esq.
     376 East Warm Springs Road, Ste. 140
     Las Vegas, Nevada 89119
     Attorney for plaintiff

13

**CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of January, 2016, I electronically transmitted the above **REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS** to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel in this matter; all counsel being registered to receive Electronic Filing.

| | |
|---|---|
| Dana Jonathon Nitz, Esq.<br>Chelsea A. Crowton, Esq.<br>WRIGHT, FINLAY & ZAK, LLP<br>5532 South Fort Apache Road<br>Suite 110<br>Las Vegas, NV   89148 | Asim Varma, Esq.<br>Howard N. Cayne, Esq.<br>Michael A.F. Johnson, Esq.<br>ARNOLD & PORTER LLP<br>555 12th Street NW<br>Washington, DC 20004 |
| Leslie Bryan Hart, Esq.<br>FENNEMORE CRAIG, P.C.<br>300 East Second Street<br>Suite 1510<br>Reno, NV 89501 | Sean L. Anderson, Esq.<br>Ryan D. Hastings, Esq.<br>LEACH JOHNSON SONG & GRUCHOW<br>8945 W. Russell Road<br>Suite 330<br>Las Vegas, NV 89148 |

 /s/ /Marc Sameroff/
An employee of Law Offices of
Michael F. Bohn, Esq., Ltd.