UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Nationstar Mortgage, LLC, et al,<br><br>    Plaintiffs<br><br>v.<br><br>Eldorado Neighborhood Second Homeowners Association, et al,<br><br>    Defendants | 2:15-cv-0064-JAD-PAL<br><br>**Order Denying Motion to Dismiss and Countermotion for Summary Judgment, and Staying Action Pending** *Bourne Valley* **Mandate**<br><br>[ECF Nos. 39, 43] |

    This case concerns the legal interests that remain in a North Las Vegas home after a 2014 non-judicial foreclosure sale by the Eldorado Neighborhood Second Homeowners Association ("the HOA"). The purchaser of the property contends that, because the HOA had a true superpriority lien under Nevada's lien laws, the foreclosure extinguished any lender's security interest and gave the purchaser clear title. But Freddie Mac, its conservator the Federal Housing Finance Agency ("FHFA"), and its loan servicer Nationstar Mortgage contend that, because Freddie Mac was the lender who held the beneficial interest in the deed of trust, the federal foreclosure bar in 12 U.S.C. § 4617(j)(3) prevented this sale from wiping out Freddie Mac's security interest while it was under the FHFA's conservatorship.

    On Saticoy Bay's motion to dismiss, I held that § 4617(j)(3) preempts Nevada's lien law "to the extent the HOA's foreclosure would have otherwise extinguished a Freddie Mac first-trust-deed-interest," so the plaintiffs "have pled a plausible legal theory."[1] But because they had not alleged that Freddie Mac or the FHFA was the beneficiary of the deed of trust on this property, I dismissed their claims with leave to amend.[2]

    Saticoy Bay now moves to dismiss the amended complaint, arguing that no recorded document reflects Freddie Mac's interest, and Saticoy Bay was a bona fide purchaser without notice

---

[1] ECF No. 37 at 2.

[2] *Id*.

who takes free and clear of Freddie's undisclosed claim.[3]  The plaintiffs oppose the motion and countermove for summary judgment, contending that a screenshot from a computer database, as interpreted by Freddie Mac's Director of Loss Mitigation Dean Meyer, conclusively proves that Freddie Mac held the secured interest in the property at the time of the foreclosure.  So the federal foreclosure bar prevented that interest from being extinguished.[4]

I find that the plaintiffs have bolstered their amended complaint with enough new facts to cure the deficiencies that caused me to dismiss their original complaint, so I deny Saticoy Bay's motion to dismiss.  I also find that Meyer's sworn statements about Freddie Mac's interest are at odds with the representations in the recorded deed-of-trust assignments, creating genuine issues of fact about who held the security interest, so I deny the plaintiffs' countermotion for summary judgment.  And because further resolution of this case may turn on the legal effect of the HOA's non-judicial foreclosure sale—a statutory procedure whose constitutionality has been called into question by a Ninth Circuit panel's recent ruling in *Bourne Valley Court Trust v. Wells Fargo Bank*[5]—I *sua sponte* stay all further proceedings in this case until the Ninth Circuit issues its mandate in *Bourne Valley*.

**Background**

**A.   The Property**

Sean and Shawna Roberts bought the home located at 1838 Fighting Falcon Lane in the Eldorado Neighborhood of North Las Vegas in 2002.[6]  They obtained a $295,200 loan from Countrywide Home Loans, Inc. in April 2007, and Countrywide assigned the deed of trust securing its note to Mortgage Electronic Registration Systems, Inc. (MERS).[7]  Attached to the deed of trust is a Planned Unit Development Rider that recognizes that the home is located within the Eldorado

---

[3] ECF No. 39.

[4] ECF No. 42.

[5] *Bourne Valley Ct. Trust v. Wells Fargo Bank*, 2016 WL 4254983, at *5 (9th Cir. Aug. 12, 2016).

[6] ECF No. 38-1 at 2–6.

[7] ECF No. 38-1 at 8.

planned unit development and thus subject to the HOA's recorded covenants, conditions, and restrictions, commonly known as "CC&Rs."[8]

Plaintiffs allege that Freddie Mac purchased the loan from Countrywide in May 2007, but the deed of trust went a different direction: it was assigned to BAC Home Loans Servicing, LP in May 2011 and from there to Nationstar in 2012, who served as Freddie Mac's loan servicer.[9] They further allege that the FHFA "succeeded by law to all of Freddie Mac's 'rights, titles, powers, and privileges'" when it became Freddie Mac's conservator in September 2008, so Freddie Mac's interests with respect to this property are now property of the FHFA.[10]

### B.  The 2014 HOA Foreclosure

On July 11, 2014, after the Robertses defaulted on their HOA assessments due under the CC&Rs, the HOA conducted a nonjudicial foreclosure sale on its outstanding lien against the property.[11] The property sold to Saticoy Bay for $10,100.[12]

Nevada's HOA lien laws, codified at NRS 116.3116 et seq., give homeowners associations lien rights against a home in planned unit development when the homeowner fails to pay certain assessments that are due and owing under the CC&Rs.[13] As the Nevada Supreme Court explained when interpreting Chapter 116 in *SFR Investments Pool 1 v. U.S. Bank*,[14] the association has a superpriority lien for "nine months of unpaid dues and maintenance and nuisance-abatement charges," so foreclosure of that lien "will extinguish a first deed of trust."[15]

---

[8] ECF No. 38-1 at 30.

[9] ECF No. 38 at ¶ 15.

[10] ECF No. 38 at ¶ 5.

[11] ECF No. 38 at ¶ 45.

[12] ECF No. 38-2 at 32.

[13] *SFR*, 334 P.3d at 410 (explaining the statutory scheme in NRS Chapter116).

[14] *SFR Inv. Pool 1 v. U.S. Bank*, 334 P.3d 408, 419 (Nev. 2014).

[15] *Id.* at 411, 419.

**C.     This Lawsuit**

Plaintiffs bring this action to retain their security interest in the Robertses' property despite the non-judicial foreclosure. They rely on the federal foreclosure bar in 12 U.S.C. § 4617(j)(3), which states that "[n]o property of [the FHFA] shall be subject to . . . foreclosure, or sale without" the FHFA's consent.[16] And they conclude that, because the security interest in this property was held by Freddie Mac while it was under the conservatorship of the FHFA—which did not consent to the foreclosure—§ 4617(j)(3) prevented that interest from being extinguished by the foreclosure sale. Thus, Saticoy Bay took this property subject to the deed of trust.[17]

Saticoy Bay moved to dismiss the complaint last year, arguing that § 4617 does not bar HOA foreclosures and, regardless, the plaintiffs had not alleged that Freddie Mac was the beneficiary of the first deed of trust on this property.[18] I rejected Saticoy Bay's legal argument and held that the federal foreclosure bar prevents Nevada's superpriority lien statute from extinguishing a Freddie Mac security interest without the FHFA's consent.[19] But because the plaintiffs had "not alleged facts to show that Freddie Mac held a secured interest in the property that was transferred to the FHFA," I dismissed the plaintiffs' claims with leave to amend.[20] They promptly amended.[21]

**D.     This New Round of Motions**

Saticoy Bay now moves to dismiss those amended claims.[22] It argues that the documents attached to the amended complaint show that all interest in the note and the deed of trust belonged to Nationwide—not Freddie Mac—at the time of the foreclosure sale, so Freddie Mac has no interest in

---

[16] ECF No. 38 at ¶ 59.

[17] *Id*. at 13.

[18] ECF No. 16.

[19] ECF No. 37 at 6.

[20] *Id*. at 9.

[21] ECF No. 38.

[22] ECF No. 39.

this property and the federal foreclosure bar does not apply. Saticoy Bay stresses that "no document has ever been recorded that assigns to Freddie Mac or FHFA any interest in the Property or in the deed of trust recorded against the Property."[23] And it argues that Saticoy Bay's status as a bona fide purchaser without notice of Freddie Mac's alleged interest further protects Saticoy Bay's title from being affected by Freddie Mac's undisclosed interest.[24]

Plaintiffs oppose the motion and countermove for summary judgment.[25] They offer the declaration of Freddie Mac's Loss Mitigation Director Dean Meyer, who reviewed Freddie Mac's MIDAS computer system, "which includes and stores information concerning Freddie Mac's purchase of loans."[26] Meyer states that the system reflects that Freddie Mac purchased the loan in May 2007 and "has not sold the Loan and has never authorized MERS or any of Freddie Mac's servicers to convey the Loan to any other entity."[27] He explains that Nationstar began servicing the loan in November 2011, and that BAC Home Loans assigned its interest in the Deed of Trust to Nationstar in March 2012.[28] And, under the terms of Freddie Mac's agreement with its servicers (known as "the Guide"),[29] "Freddie Mac maintain[ed] ownership of the deed of trust" and can "compel an assignment of the deed of trust" while its servicer is the beneficiary of record.[30] Thus, Freddie Mac—who was under the FHFA's conservatorship—owned the loan and the first-position security interest in the property at the time of the 2014 foreclosure.

---

[23] *Id*. at 11.

[24] *Id*. at 15–17.

[25] ECF No. 42.

[26] ECF No. 42-1 at 2.

[27] *Id*. at 5 (Meyer declaration); ECF No. 42-1 at 8 (screen shot).

[28] *Id*.

[29] *Id*.

[30] ECF No. 42 at 11.

**Discussion**

**A.     Saticoy Bay's Motion to Dismiss the Amended Complaint**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint.[31] A complaint should be dismissed under this rule only when it lacks "a cognizable legal theory or sufficient facts to support a cognizable legal theory."[32]

The factual deficiency in the original complaint that caused me to dismiss it was the absence of any allegation that Freddie Mac had the ability to require Nationstar to assign the deed-of-trust rights to Freddie Mac.[33] Plaintiffs have filled that void with their new allegation that:

> at the time of the HOA Sale in July 2014, Freddie Mac owned the note and Deed of Trust, while Nationstar served as the beneficiary of record of the Deed of Trust in its role as Freddie Mac's servicer—a role in which Nationstar was contractually required, on Freddie Mac's demand, to assign Nationstar's interest as record beneficiary of the Deed of Trust to Freddie Mac.[34]

That allegation is bolstered by further explanation that, under the terms of Freddie Mac's purchase of the loan, Freddie Mac had the right "at any time and without limitation" to "require the Seller or the Servicer, at the Seller's or the Servicer's expense, to make such . . . assignments and recordations of any of the Mortgage documents so as to reflect the interests of Freddie Mac."[35]

Saticoy Bay argues that the absence of any recorded document assigning to Freddie Mac or the FHFA any interest in the property or in the deed of trust is fatal, and the computer evidence that plaintiffs rely on is worthless. But on a motion to dismiss, my job is not to weigh the allegations or the evidence attached to the pleadings. I must accept all of the well-pled factual allegations in the

---

[31] *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

[32] *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

[33] ECF No. 37 at 8 ("whether this requisite relationship exists between Freddie Mac and Nationstar is not evident from the complaint. Plaintiffs allege that 'Nationstar was the servicer for Freddie Mac' on the mortgage, but the details and net effect of that relationship are not described.").

[34] ECF No. 38 at ¶ 15.

[35] *Id*. at ¶ 25.

amended complaint as true and construe them in the light most favorable to the plaintiffs.[36]  Whether the evidence resolves all issues of fact on summary judgment or will tip the scale in the plaintiffs' favor at trial is not the test.  Because the plaintiffs have pled sufficient facts to allow me to "draw the reasonable inference" that Freddie Mac was the beneficial owner of the note and the deed of trust at the time of the foreclosure sale, their amended complaint now survives Saticoy Bay's Rule 12(b)(6) challenge.  The Motion to Dismiss the Amended Complaint[37] is denied.[38]

## B.     Plaintiffs' Countermotion for Summary Judgment

Freddie Mac's allegation that cryptic notations in its computer system show that it held the beneficial interest in the loan and its corresponding deed of trust saves plaintiffs' claims from Rule 12(b)(6) dismissal, but this evidence does not save the plaintiffs from having to prove their claims at trial.  Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[39]  When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[40]  If reasonable minds could differ on the material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the

---

[36] *Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 977 (9th Cir. 2007).

[37] ECF No. 39.

[38] To the extent that Saticoy Bay continues to challenge the legal basis for plaintiffs' claims—that § 4617(j)(3)'s federal foreclosure bar prevents Nevada's superpriority lien statute from extinguishing the Freddie Mac's interest without the FHFA's consent—I do not revisit my prior holding that "*if* Freddie Mac held a secured interest in the property, the HOA's foreclosure of its superpriority loan could not have extinguished it." *See* ECF No. 37 at 7.  I recognize that Saticoy Bay has expanded its original dismissal arguments to include the assertion that its bona-fide-purchaser-without-notice status bars the application of § 4617(j)(3).  But even if I were to conclude that Saticoy Bay's status as a BFP could prevent § 4617(j)(3) from applying, I would have to go outside the pleadings to ascertain whether Saticoy Bay qualifies as a BFP, and I decline to do that on this 12(b)(6) motion to dismiss.

[39] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing FED. R. CIV. P. 56(c)).

[40] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

facts are undisputed, and the case must then proceed to the trier of fact.[41] Only when the moving party satisfies FRCP 56 by demonstrating the absence of any genuine issue of material fact does the burden shift to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for as to the material facts."[42]

Although the computer-screen printout and Meyer's declaration explaining what the contents of that document mean is some evidence that Freddie Mac owned an interest in this property, it is not the only evidence in the record. Meyer declares, based only his review of the MIDAS system, that Freddie Mac bought the loan in 2007,[43] but he also acknowledges that the deed of trust was separated from the note and assigned to MERS, then to BAC Home Loans, and ultimately to Nationstar.[44] The recorded documents attached to the motion to dismiss confirm this history.[45]

Separation of the note from the deed of trust does not necessarily render the note unsecured. Under Nevada law, "if an agency relationship exists between" the lender and the beneficiary of the deed of trust "such that the note holder, as principal, can require its agent . . . to assign the mortgage to it, then the note remains secured."[46] Meyer tiptoes around this issue but does not squarely meet it. He declares that MERS was the beneficiary under the 2007 deed of trust, "acting solely as nominee for" Countrywide[47] and that MERS assigned that interest to BAC Home Loans in May 2011—which

---

[41] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[42] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson,* 477 U.S. at 248–49.

[43] ECF 42-1 at 4.

[44] *Id*. at 4–5.

[45] ECF No. 39-2. I take judicial notice of these recorded documents. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (court may take judicial notice of recorded documents).

[46] *In re Montierth*, 354 P.3d 648, 650–51 (Nev. 2015).

[47] How Meyer has personal knowledge of this fact and many others is not evident from his declaration.

then assigned it to Nationstar in 2012[48]—but he never tells us that, or how, Freddie Mac acquired an interest in that deed of trust. This deficiency in the record evidence alone leaves the plaintiffs unable to establish the absence of a genuine issue of fact that would shift the summary-judgment burden of proof to Saticoy Bay.

Even if I ignored this void in the evidence and assumed that Freddie Mac somehow became the beneficiary of the deed of trust, too, the recorded documents cast doubt on that conclusion. The assignment of the original deed of trust to BAC Home Loans Servicing on May 16, 2011,[49] recites that it transfers "all beneficial interest under that certain Deed of Trust . . . together with the note(s) and obligations therein described . . . ."[50] The 2012 assignment of that same deed of trust from BAC to Nationstar similarly purports to transfer "All beneficial interest" under the deed of trust "Together with the Note or Notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust."[51] These recitals suggest that even if Freddie Mac did purchase the note in 2007, it—and the deed of trust—belonged to Nationstar by the time of the HOA's 2014 foreclosure sale. This evidence also starkly conflicts with Meyer's declaration that "Freddie Mac . . . has never authorized MERS or any of Freddie Mac's servicers to convey the Loan to any other entity."[52] Plaintiffs attempt to mitigate the assignments as "boilerplate form language" that had no legal effect because, in fact, Freddie Mac owned these interests before—and after—the assignments. But the language in these assignments—publicly recorded documents—reflects a transfer of both the deed of trust and the note, and a genuine dispute of fact thus remains about whether Freddie Mac owned any interest in this property at the time of the HOA foreclosure sale. I thus deny plaintiffs' motion for summary judgment.

---

[48] ECF No. 42-1 at 3–5.

[49] ECF No. 39-2 at 2.

[50] *Id.*

[51] ECF No. 39-4 at 2.

[52] ECF No. 42-1 at 5.

### C.     This Case Is Temporarily Stayed.

Because further proceedings may turn on the legal viability of the 2014 nonjudicial foreclosure sale, I now stay this case until we have further guidance from the Ninth Circuit on that issue.

Last month, two members of a Ninth Circuit panel held in *Bourne Valley Court Trust v. Wells Fargo Bank* that Chapter 116's nonjudicial foreclosure scheme "facially violated mortgage lenders' constitutional due process rights" before it was amended in 2015.[53] The opinion, to which Judge Wallace filed a lengthy dissent, makes no mention of the Nevada Supreme Court's own interpretation of Chapter 116's notice provisions in the *SFR* opinion and the state's highest court's conclusion that the statutory scheme does not offend due process.[54] Nor does the majority's analysis take into consideration Nevada's rules of statutory construction that cloak the state's laws with the presumption of constitutionality[55] or the canon of constitutional avoidance.[56] The purchaser has filed a petition for rehearing, and the Circuit has directed a response. To save the parties from the need or inclination to invest resources briefing the effect of the *Bourne Valley* opinion before those post-opinion motions are exhausted, I *sua sponte* stay all proceedings in this case pending the Ninth Circuit's issuance of the mandate.

A district court has the inherent power to stay cases to control its docket and promote the

---

[53] *Bourne Valley Ct. Trust v. Wells Fargo Bank*, 2016 WL 4254983, at *5 (9th Cir. Aug. 12, 2016).

[54] *SFR*, 334 P.3d at 418.

[55] *See Las Vegas Dev. Grp., LLC v. Yfantis*, 2016 WL 1248693, at *3 (D. Nev. Mar. 24, 2016) (quoting *State v. Castaneda*, 245 P.3d 550, 552 (2010) (en banc), and rejecting argument that the foreclosure scheme in NRS 116.3116 et seq. violates due process). Four of the six active district court judges in the District of Nevada have rejected the banks' due-process challenges. *See Yfantis, supra* (Gordon, J.); *Morgan Chase Bank v. SFR Investments Pool*, 2016 WL 4084036, at *8 (D. Nev. July 28, 2016) (Boulware, J.); *Capital One v. Las Vegas Dev. Group*, 2016 WL 3607160, at 5 (D. Nev. June 30, 2016) (Dorsey, J.); *Bank of Amer. v. Rainbow Bend HOA*, 2016 WL 1298114, at *3 (D. Nev. Mar. 31, 2016) (Du., J.) (rejecting constitutional challenges based on lack of state action); *see also Deutsche Bank v. TBR I, LLC*, 2016 WL 3965195, at *3 (D. Nev. July 22, 2016) (Hicks, S.J.) (same); *but see U.S. Bank v. NV Eagles, LLC*, 2015 WL 5210523, at *6–13 (D. Nev. Sept. 3, 2015) (Jones, S.J.) (holding that the statutory scheme does not satisfy due process).

[56] *See Clark v. Martinez*, 543 U.S. 371, 381 (2005) (discussing the doctrine).

efficient use of judicial resources.[57] When determining whether a stay is appropriate pending the resolution of another case—often called a "*Landis* stay"—the district court must weigh: (1) the possible damage that may result from a stay, (2) any "hardship or inequity" that a party may suffer if required to go forward, (3) "and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law" that a stay will engender.[58] After weighing these considerations, I find that a *Landis* stay is appropriate here. I address these considerations in reverse order.

### 1. A stay will promote the orderly course of justice.

At the center of this case is an HOA-foreclosure sale under NRS Chapter 116 and the competing arguments that the foreclosure sale either extinguished the bank's security interest under the *SFR* holding or had no legal effect because the statutory scheme violates due process.[59] The *Bourne Valley* opinion and any modification of that opinion have the potential to be dispositive of this case or at least of discrete issues that it presents. As the jurisprudence in this area of unique Nevada law continues to evolve, the parties file new motions or move to supplement the ones that they already have pending, often resulting in docket-clogging entries and an impossible-to-follow chain of briefs in which arguments are abandoned and replaced. Staying this case pending the mandate in *Bourne Valley* will permit the parties to evaluate—and me to consider—the viability of the claims under the most complete precedent. This will simplify and streamline the proceedings and promote the efficient use of the parties' and the court's resources.

### 2. Hardship and inequity balance in favor of a temporary stay.

Both parties face the prospect of hardship if I resolve the claims or issues in this case before the Ninth Circuit issues the mandate in *Bourne Valley*. A stay will prevent unnecessary briefing and the expenditures of time, attorney's fees, and resources that could be wasted—or at least prematurely

---

[57] *Landis v. North American Co.*, 299 U.S. 248, 254–55 (1936); *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007).

[58] *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005).

[59] *See* ECF No. 1 at 6-8.

spent—should the panel or the *en banc* court issue a subsequent opinion.

**3.    Damage from a stay is minimal.**

The only potential damage that may result from a stay is that the parties will have to wait longer for resolution of this case and any motions that they intend to file in the future. But a delay would also result from any rebriefing or supplemental briefing that may be necessitated if the panel or the *en banc* court rehears the matter. So it is not clear to me that a stay pending the *Bourne Valley* mandate will ultimately lengthen the life of this case. I thus find that any possible damage that a stay may cause the parties is minimal.

**4.    The length of the stay is reasonable.**

Finally, I note that the stay of this case pending the *Bourne Valley* mandate is expected to be reasonably short. The petition for rehearing has been filed and a response has already been ordered. Because the length of this stay is directly tied to the Circuit's issuance of its mandate in *Bourne Valley*, it is reasonably brief and not indefinite.

**Conclusion**

IT IS THEREFORE ORDERED that **Saticoy Bay's Motion to Dismiss [ECF No. 39] is DENIED**;

IT IS FURTHER ORDERED that **Plaintiffs' Countermotion for Summary Judgment [ECF No. 43] is DENIED**; and

IT IS FURTHER ORDERED that **this case is administratively STAYED**. Once the Ninth Circuit issues the mandate in *Bourne Valley Court Trust v. Wells Fargo Bank*, case number 15-15233 (2:13-cv-649-PMP-NJK), any party may move to lift the stay. Until that time, all proceedings in this action are stayed with one exception: **this stay has no impact on any party's obligation to timely serve process and file proof of service.**

Dated this 16th day of September, 2016

_____
Jennifer A. Dorsey
United States District Judge